UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR MANUEL BENITEZ CASILLAS,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 5:26-cv-04935-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING A NEW BOND HEARING WITHIN SEVEN DAYS |

## I. INTRODUCTION

Oscar Manuel Benitez Casillas, a.k.a. Oscar Benitez Casillas ("Petitioner")[1] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 9), and Petitioner replied ("Reply" at Dkt. 10). The

[1] The Petition lists Petitioner's name as "Oscar Manuel Benitez Casillas," but some DHS records refer to him as "Oscar Benitez Casillas." See ICE Online Detainee Locator System, https://locator.ice.gov/odls/#/search (A# 200-947-837 (Mexico), last accessed Sept. 14, 2026).

parties consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

The Petition is granted, and Respondents shall release Petitioner unless they provide him with a new bond hearing within 7 days.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into the United States (1991-2007).

Petitioner is a native and citizen of Mexico. (Pet. at 5.) He entered the United States as a young child, at approximately five or six years of age, and has resided here for more than three decades. (Id.) He attended high school in the United States, married a United States citizen, and has two United States citizen children. (Id. at 10.) He has lived at the same residence with his family for approximately ten years. (Id.)

### B. Convictions and Initiation of Removal Proceedings (2008-2018).

In 2007, Plaintiff received a "citation involving loud music." (Id. at 11.)

In 2008, Petitioner was convicted of gross vehicular manslaughter while intoxicated. (Id. at 11.) The person who died was Petitioner's best friend, a passenger in his vehicle. (Id.) Petitioner served a sentence of nine months. (Id.)

In 2010, Petitioner was convicted of driving on a suspended license.[2] (Id.)

In September 2010, ICE apprehended Petitioner and then released him on a bond of $1,500, the statutory minimum, which his wife posted. (Id.; see also Pet. Ex. 2 / Dkt. 1-2 (copy of Form I-352, Immigration Bond).)

### C. Removal Order and Successful Appeal (2019-2025).

An Immigration Judge ("IJ") in Los Angeles denied voluntary departure and ordered Petitioner removed on June 3, 2019. (Pet. at 12.) Petitioner appealed, and DHS filed no opposition to the appeal. (Id.) On June 3, 2022, the Board of

---

[2] The dates of these convictions are taken from the Petition. Documents submitted as evidence at the bond hearing seem to show that the manslaughter conviction occurred in 2007. (Pet. Ex. 4 / Dkt. 1-4 at 5-6.)

Immigration Appeals ("BIA") sustained the appeal and remanded, holding that the IJ's decision did not reflect consideration of DHS's affirmative non-opposition to a grant of voluntary departure. (Id.)

Following remand, DHS moved to dismiss the removal proceedings as an exercise of prosecutorial discretion, and the case was terminated in 2023. (Id.) During this time, Petitioner appeared at every hearing required of him and sustained no new convictions. (Id. at 2.)

**D. Re-Detention and Bond Hearing (2026).**

ICE arrested Petitioner again in June 2026. (Id. at 2, ¶ 1.) A Notice to Appear issued on June 27, 2026. (Id. at 12, ¶ 39.)

On August 7, 2026, an IJ held a bond hearing at the Adelanto Immigration Court. (Id.) Petitioner was represented by counsel at the bond hearing. (Pet. Ex. 3 / Dkt. 1-3 (unofficial transcript).) Petitioner submitted more than 100 pages of evidence to the IJ at the bond hearing. (Pet. Ex. 4 / Dkt. 1-4.) This included evidence of Petitioner's family's financial condition, i.e., (1) lease-related documents (id. at 23, 51), and (2) tax forms, including 1040s and W2s, from 2019-2025 (id. at 27-68). According to the 2025 Form 1040, Petitioner's family's adjusted gross income was $39,386. (Id. at 63.) Rent for the family of four was $1,250/month, leaving about $24,000 (or $2,000/month) for all other expenses. (Id. at 51.)

Petitioner has filed an unofficial transcript of the bond hearing. (Pet. Ex. 3 / Dkt. 1-3.) Per the IJ's statements at the hearing, the IJ considered bond under 8 U.S.C. § 1226(a), placing the burden of proof on Petitioner. (Id. at 2.) The IJ asked both attorneys questions, but he asked no questions about Petitioner's income, assets, savings, expenses, or what his family could raise. (Id.) Petitioner's counsel argued that the amount of any bond should not exceed $1,500, the statutory minimum and the amount previously found sufficient in 2010. (Id. at 7.) There was no other argument at the hearing about the appropriate amount of any

potential bond or the supporting reasons. (Id.) The IJ ended the hearing by taking the matter under submission without announcing a decision or the amount of any bond. (Id. at 8-9.)

After the hearing, the IJ issued a written bond order dated August 7, 2026. (Pet. Ex. 5 / Dkt. 1-5.) Using a check-box form, the IJ ordered that bond was "Granted" and that Petitioner be "released from custody under bond of $ 25,000.00" and subject to other standard conditions, such as not committing new crimes. (Id.) Both sides reserved the right to appeal to the BIA. (Id. at 2.)

Petitioner remains detained because his family is unable to post the $25,000 bond. (Pet. at 15.) He remains in ICE custody and has been continuously detained since June 2026. ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 200-947-837 (Mexico), last accessed Sept. 14, 2026). Petitioner currently has a "master hearing" scheduled in immigration court for September 16, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 200-947-837 (Mexico), last accessed Sept. 8, 2026).

**E. BIA Appeal.**

In the Petition filed on August 27, 2026, Petitioner alleged that he intended to appeal the amount of the bond before the time expires to do so, i.e., before September 9, 2026. (Pet. at 6.) It appears that, on August 27, 2026, Respondents appealed the IJ's decision to grant bond rather than detain Petitioner without bond. (See Reply Ex. 1 / Dkt. 10-1; but see Answer (failing to mention this appeal).)

**F. Current Habeas Proceedings.**

Petitioner filed the current counselled Petition on August 27, 2026. (Dkt. 1.) The Petition raises the following claims for relief:

Ground 1(a): The IJ violated due process by setting a bond amount "without any consideration of Petitioner's ability to pay." (Pet. at 17, citing Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017).)

Ground 1(b): The IJ violated 8 C.F.R. § 1003.19(f) by failing to explain the basis for the bond amount decision at the time of the decision, either orally or in writing. (Id. at 19); see 8 C.F.R. § 1003.19(f) ("The determination of an [IJ] with respect to custody status or bond redetermination shall be entered on the appropriate form at the time such decision is made and the parties shall be informed orally or in writing of the reasons for the decision.").

Ground 2: The IJ abused his discretion by "failing to consider and address the evidence submitted" and/or by failing to provide a decision that "describes which factors were considered or what evidence was relied upon." (Id. at 20.)

Petitioner prays that the Court (1) order his release from custody on a $1,500 bond; or (2) order Respondents to provide Petitioner a new bond hearing within 7 days, at which the IJ is required to "consider the evidence presented at the August 7, 2026 hearing and determine, on the record with express findings," the appropriate bond amount. (Id. at 26.)

On August 28, 2026, the Court issued its Standing Order for § 2241 Immigration Petitions, which states in relevant part, "**Failing to file an answer by the due date—or filing an answer that fails to substantively respond to any claim in the petition—may result in the Court granting the petition or claim as unopposed.**" (Dkt. 6 at 1-2) (emphasis in original).

Respondents answered the Petition on September 2, 2026. (Dkt. 9.) They argue that the Court should deny the Petition because Petitioner failed to exhaust his administrative remedies by "completing his appeal" of the IJ's bond order to the BIA. (Id. at 1.) The Answer does not acknowledge that Respondents had (it appears) already appealed the IJ's bond order a few days earlier. The Answer does not contain any argument regarding the merits of Petitioner's claims.

Petitioner replied on September 3, 2026. (Dkt. 10.) He argues that exhaustion is prudential, not statutory, and appealing to the BIA is not an adequate remedy because such appeals often take longer than a year. (Id. at 4-5.) He argues

that upon finding exhaustion waived, the Court should grant the Petition based on Respondents' failure to address the merits of his claims. (Id. at 4.)

On September 4, 2026, the Court instructed Petitioner to file a notice attaching any more detailed written decision that the IJ might prepare in response to Petitioner's appeal. (Dkt. 11.) Petitioner responded on September 7, 2026, advising that (1) the IJ had not yet served a more detailed written decision, even though Respondents had appealed to the BIA back in August; and (2) even if the IJ served a more detailed written decision at some future date, it would not moot Petitioner's claims. (Dkt. 12.)

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies is Excused.

#### 1. Legal Standard.

Where a petitioner denied bond under § 1226(a) does not exhaust his administrative remedies by appealing to the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). However, in this context, the exhaustion requirement is prudential, rather than jurisdictional. Courts deciding whether to require prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

"Exhaustion is futile where continuing administrative proceedings 'would clearly be of no avail,' Fones4All Corp. v. FCC, 550 F.3d 811, 818 (9th Cir. 2008), where there is 'certainty of an adverse decision,' Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney, 932 F.3d 1207, 1219 (9th Cir. 2019), or where there is 'undisputed evidence of administrative bias,' White Mountain [Apache Tribe v. Hodel], 840 F.2d [675,] 677 [9th Cir. 1988]." Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior, 819 F. App'x 480, 482 (9th Cir. 2020).

**2. The Parties' Arguments.**

Petitioner argues that the Puga factors excuse exhaustion. (Pet. at 6-7; Dkt. 9 at 2-3.) First, he argues that "agency expertise" is unnecessary to develop a factual record, because the necessary facts are fully developed and his claims present questions of law. (Id. at 6-7.) Second, he argues that waiving exhaustion will not encourage bypassing BIA review, because there is already a powerful motive to bypass BIA review: "bond appeals can take months and while subjecting the noncitizen to longer unlawful detention." (Id. at 8.) Finally, he argues that the BIA is "not better equipped than this Court" to resolve the legal issues presented. (Id.) Petitioner further argues that, regardless of the Puga factors, waiver of prudential exhaustion is justified under Laing because (1) it is unclear that the BIA would even consider the legal claims raised; and (2) he will suffer irreparable harm by remaining in ICE detention during a lengthy appeal to the BIA. (Id. at 9-10.)

Respondents argue that prudential exhaustion should not be waived. (Dkt.

9.) They argue that the BIA "if necessary, can generate a more complete factual record," but they fail to describe what additional facts might be necessary in this specific case. (Id. at 2.) They argue that the second Puga factor always weighs in favor of requiring complete exhaustion, however long it takes, because otherwise, detained noncitizens will overwhelm the courts by "immediately seek[ing] habeas review if they deem the federal courts to be a more sympathetic forum." (Id. at 3.) They argue that "[a]llowing the BIA to consider the appeal would give the agency the ability to correct any possible errors in Petitioner's case and potentially preclude the need for judicial review." (Id. at 3.) Finally, they contend that waiver is not justified under Laing because Petitioner's remaining in ICE custody for however long it takes for the BIA to resolve an appeal "is not irreparable harm that excuses exhaustion." (Id.)

**3. Analysis.**

Consideration of the Puga factors weighs against requiring prudential exhaustion in this case. Comparison with the district court case cited in Respondents' Answer (Dkt. 9 at 2), Martinez v. Scott, No. 25-cv-1538, 2025 WL 2689844 (W.D. Wash. Aug. 27, 2025), report & recommendation adopted, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025), is instructive.

When considering the first Puga factor, the district court in Martinez found that the IJ had not issued a written decision explaining why they denied bond. The court concluded that, if the petitioner appealed, "the BIA would expand the available record by requiring the IJ to provide a written decision fully explaining why Petitioner was denied bond." Martinez, 2025 WL 2689844, at *5.

Here, in contrast, this Court has an unofficial transcript of the August 7, 2026 bond hearing (Pet. Ex. 3 / Dkt. 1-3), a written order from the IJ (Pet. Ex. 5 / Dkt. 1-5), and the evidence submitted to the IJ (Pet. Ex. 4 / Dkt. 1-4). While a more robust written order would be helpful in understanding the IJ's reasoning, it is not clear that such an order will necessarily be generated in response to the

pending appeal. The applicable regulations do not appear to require it. See generally 8 C.F.R. § 1003.37(a) ("A decision of the [IJ] may be rendered orally or in writing. If the decision is oral, it shall be stated by the [IJ] in the presence of the parties and a memorandum summarizing the oral decision shall be served on the parties. If the decision is in writing, it shall be served on the parties by personal service, mail, or electronic notification."); EOIR Policy Manual, Part III – Board Practice Manual, Chapter 3 – Appeal of Immigration Judge Decisions, § 3.2 – Process (same).[3] Respondents have not convincingly explained what other aspects of the record would be developed by requiring Petitioner to perfect the BIA appeal.

In considering the second Puga factor, the Martinez decision distinguished the petitioner's "fact-intensive" arguments from "purely legal" questions, finding that the latter might "answer a recurring legal question thereby reducing the number of future habeas filings," while claims like Petitioner's would only "resolve the question of whether Petitioner—and Petitioner alone—is entitled to bond as a matter of constitutional law." Martinez, 2025 WL 2689844, at *5. Here, although Petitioner's claims are fact-intensive, he raises several legal issues that could reoccur. These include: (a) whether an IJ is presumed to have considered evidence of financial means when setting a bond amount; (b) if so, what kind of evidence is sufficient to rebut that presumption; (c) whether an IJ violates due process by setting a bound amount without considering the noncitizen's financial means; and (d) whether an IJ violates 8 C.F.R. § 1003.19(f) by setting a bond amount without providing reasons for the amount, either orally or in a written order issued at the time of the decision.

Finally, the Martinez decision found that the petitioner had not presented evidence of "individualized" irreparable harm, distinguishing cases where

---

[3] The manual is available online at: https://www.justice.gov/eoir/policy-manual-eoir/part-III/bia/chapter-3-2 (last accessed Sept. 14, 2026).

petitioners had alleged that their detention worsened their health issues, prevented them from defending an ongoing criminal prosecution, or "interfere[d] with her ability … to care for her 9-year-old daughter." Martinez, 2025 WL 2689844, at *6. The last example is precisely the type of irreparable harm Petitioner alleges in this case. A declaration from Petitioner's wife in support of the Petition explains that, although he lacks a valid work permit, he provides valuable service to his family by being a stay-at-home parent. (Pet. Ex. 7 / Dkt. 1-7 at 1.) He takes care of the couple's two children, taking them to school and doctor's appointments. (Id.) Petitioner's family cannot afford to pay someone else to provide these services. (Id. at 1-2.)

Accordingly, at least two of the Puga factors weigh in favor of waiving the administrative exhaustion requirement, and Petitioner has demonstrated irreparable harm under Laing and Hernandez. The prudential exhaustion requirement is therefore waived.

**B. Petitioner is Entitled to Relief on Ground 1(a).**

**1. Legal Standard.**

a. The Statutory Scheme for Bond Hearings.

The purpose of bond hearings provided under 8 U.S.C. § 1226(a) is to assess whether detention is necessary to mitigate flight risk or protect the community from public-safety risks. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). At a § 1226(a) bond hearing, dangerousness is a threshold inquiry. "[O]nly if [a noncitizen[4]] has established that he would not pose a danger to property or persons

---

[4] This order generally uses the term noncitizen rather than alien. See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

should an [IJ] decide the amount of bond necessary to ensure the [noncitizen's] presence at proceedings to remove him from the United States." In re Garcia Arreola, 25 I. & N. Dec. 267, 272 (BIA 2010) (discussing In re Urena, 25 I. & N. Dec. 140 (BIA 2009)). "In this regard, the setting of bond is designed to ensure [a noncitizen's] presence at [removal] proceedings …." Urena, 25 I. & N. Dec. at 141. If it is determined that the noncitizen is not a danger, IJs should then consider "the other factors in the case relevant to determining the amount of bond necessary to ensure the respondent's presence at further proceedings …." Id.

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent, often called the "Guerra factors." Martinez, 124 F.4th at 783 (citing In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2008)). Flight-risk determinations "allow[] for flexibility" in ascertaining the "likelihood, or probability, of appearance," which "could vary from none to great" depending on the individual circumstances of the case. See In re Drysdale, 20 I. & N. Dec. 815, 818 (BIA 1994). "This enables the [IJ] to set a bond according to his assessment of the amount needed to motivate the [noncitizen] to appear in light of the considerations deemed relevant to bond determinations." Id.

b. Constitutionally Required Considerations.

In Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017), several noncitizens challenged a DHS policy of refusing to consider evidence of financial means when setting bond amounts. After the district court preliminarily enjoined DHS from enforcing this policy, DHS appealed. The Ninth Circuit affirmed, finding that the plaintiffs were "likely to succeed on the merits of their claim under the Due Process Clause." Id. at 990. For detainees who have already "been determined to be neither dangerous nor so great a flight risk as to require detention without bond," the Ninth Circuit held that "consideration of the detainees' financial circumstances, as well as of possible alternative release conditions, [was] necessary to ensure that the conditions of their release will be reasonably related to

the governmental interest in ensuring their appearance at future hearings. Id. at 990-91. The Ninth Circuit reasoned that a "bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." Id. at 991. Similarly, the Ninth Circuit expressed disbelief that the government "would refuse to consider alternatives to monetary bonds that would also serve the same interest the bond requirement purportedly advances." Id. (citing statistics showing that the "Intensive Supervision Appearance Program—which relies on various alternative release conditions—resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). The Ninth Circuit ultimately ruled that detention of an indigent noncitizen "for inability to post money bail" is impermissible if the individual's "appearance at trial could reasonably be assured by one of the alternate forms of release." Id. at 990 (citing Pugh v. Rainwater, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)); see also Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) ("We have also applied Mathews [v. Eldridge, 424 U.S. 319 (1976)] in holding that the IJ is required to consider financial circumstances and alternative conditions of release in setting a monetary bond under § 1226(a).") (citing Hernandez, 872 F.3d at 993-95); see also Black v. Decker, 103 F.4th 133, 145-159 (2d Cir. 2024) (upholding a district court decision requiring the immigration court to consider ability to pay and potential conditions of release that would ensure appearance when setting a bond amount).

c. Rebuttable Presumption that the IJ Considered Evidence in the Record.

Petitioner submitted evidence of his limited financial means to the IJ. (Pet. Ex. 4 / Dkt. 1-4.) The IJ accepted that evidence. (Pet. Ex. 3 / Dkt. 1-3 at 1-2.)

It is presumed that an IJ reviews all evidence in the record. Larita-Martinez v. I.N.S., 220 F.3d 1092, 1095 (9th Cir. 2000). A noncitizen must overcome that

presumption when claiming that the IJ violated his or her due process rights (or any other legal duty based on statute, regulation, or case law) by failing to consider relevant evidence. Id.; see also Almaghzar v. Gonzales, 457 F.3d 915, 922 (9th Cir. 2006) ("Because there is no evidence that the IJ failed to consider Almaghzar's documentary evidence, we accept the IJ's general statement that he considered all the evidence before him."). "But when there is an indication that something is amiss, like if the [immigration court] 'misstat[es] the record' or 'fail[s] to mention highly probative or potentially dispositive evidence,'" federal courts "do not credit [the immigration court's] use of a 'catchall phrase' to the contrary." Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (quoting Cole v. Holder, 659 F.3d 762, 771 (9th Cir. 2011)).

**2. Analysis.**

Here, the IJ found that Petitioner was not too dangerous to authorize release on bond. (Pet. Ex. 5 / Dkt. 1-5.) Under Hernandez, the IJ was constitutionally required to consider both Petitioner's financial means and alternative release conditions in setting the amount of any bond. The IJ set a bond of $25,000, which is more than half of Petitioner's annual household income. (Pet. Ex. 5 / Dkt. 1-5.)

In essence, Petitioner argues that he has rebutted any presumption that the IJ considered his financial means because the bond amount was so high relative to his income and the other factors all showed a low risk of flight. At the hearing, Petitioner's counsel pointed out Petitioner's long-standing family ties, his record of perfect attendance at immigration court, his coming to the U.S. as a child, his maintaining the same residential address for ten years, and his working when authorized. (Pet. Ex. 3 / Dkt. 1-3 at 3, 5, 7-8 (hearing transcript).) Indeed, he had previously received a bond of $1,500 which was sufficient to deter him from fleeing even after he was ordered removed – an order that was later reversed on appeal. (Pet. at 22-23.) Yet the IJ "set bond at more than sixteen times the amount the agency itself selected in 2010 — when the conviction was two years old rather

than eighteen, when Petitioner had one United States citizen child rather than two, and when he had no demonstrated record of appearance whatsoever." (Id. at 23.) These facts are sufficient to rebut the presumption that the IJ considered the evidence of Petitioner's financial means.

Because Respondents did not address the merits of this claim, they have not presented any opposition to Petitioner's argument that the IJ violated his constitutional rights, as established by Hernandez, to have the IJ consider evidence of his financial means when setting the bond amount. The Court previously warned Respondents that a failure to address the merits of any claim might result in this Court granting that claim as unopposed. (Dkt. 6 at 1-2) Accordingly, Petitioner is entitled to relief on Claim 1(a).

### C. Grounds 1(b) and 2 Are Dismissed as Moot.

Grounds 1(b) and 2 seek the same relief as Ground 1(a). Because this order grants relief on Ground 1(a), there is no further relief the Court can grant on the other grounds. Accordingly, they are dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1(a) of the Petition is granted, and Grounds 1(b) and 2 are dismissed as moot.[5]
2. Respondents shall release Oscar Manuel Benitez Casillas, a.k.a. Oscar Benitez Casillas (A# 200-947-837) unless, within 7 days of the date of this order, he is provided with a new bond hearing at which the IJ considers his ability to pay any bond that is set and issues an oral or written ruling explaining the IJ's reasoning. At a minimum, the IJ's

[5] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

ruling must explain: (a) how the IJ considered and weighed evidence of Petitioner's financial means; (b) how the IJ considered and weighed the Guerra factors in setting the bond amount; (c) whether any alternative conditions of release would adequately deter flight; and (d) why a bond of more than $1,500 is necessary now when a bond of $1,500 was sufficient from 2010-2026.

DATED: September 14, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE